O’Neall J.
delivered the opinion of the Court.
This case presents another of the many difficult and litigated questions arising out of suits on administration bonds. The difficulty of reaching in a Court oflaw the real justice of eveiy such question has often induced me to regret, that exclusive jurisdiction of suits on the bonds of administrators and guardians had not been, by act of the Legislature, conferred upon the Court of Equity. Securities are often more interested in the correct settlement of the accounts of an administrator or guardian, than he is himself; and yet, unless in extraordinary cases, neither the Courtof Equity nor the Ordinary has any authority to make them parties to the account. This case itself is an illustration of the facility with which the Court of Equity, and perhaps even the Ordinary, might have meted out justice to all parties, and thus have disposed, without trouble, of a point, which by circuity of action, has become a question of some difficulty. If the securities to the administration bond had been parties to the account, they could, and would have raised the objection, that their principal had been appointed the guardian of the distributees, and had a right in that character to the funds; and that his retention of them in that character was a discharge to his securities in the administration bond. And after ascertaining the amount in his hands, the decree might, and would, have allowed the objection as a bar to his accounting for the same fund as administrator, for which he was liable to account as guardian. But as the case really is, the administrator is cited to appear before the Ordinary at the instance of the only distributee’ who has attained full age; makes default; and thereupon a decree is made for the whole balance in his hands, after the payment of the debts. The question made by the pleadings upon this state of facts, is, whether that decree is conclusive against the defence that the administrator had fully administered; had the surplus in his hands ready to be paid over to the distributees who were minors ; had been appointed by the Court of Equity their guardian; had given bond and security for the faithful discharge of his duty as guardian; and had charged himself in the guardianship accounts with the amount in his hands.
*62 The Court of law has no authority to investigate the accounts 0£ an administrator or guardian, except on an appeal from the decision of the Ordinary; and this want of jurisdiction, as well as the letter of the contract in the bond of an administrator, made .it an indispensable prerequisite to the sustaining^ a suit on it, that he should have been required to account either before the Ordinary, or in the Court of Equity, and that the decree of one or the other of these Courts should have adjusted his accounts, and thus fixed the sum for which he was to be liable. Ordinary v. Williams & Parkman, 1 N. & M. 587. Lyles v. Brown, Harp. 31. Anderson v. Maddox, 3 M’C. 237. Harrington v. Cole. Ib. 509. For these purposes the decree has been regarded as conclusive, but beyond these it never had that effect: For the security has the right to look into the decree, to see that he is charged according to the form and effect of his undertaking. So if the security be legally discharged from his securityship, and in a suit against the administrator, he is decreed to account for and to pay a given sum, for an act done by him after the surety’s discharge, the decree would not conclude that defence. Shelton ads Cureton, 3 M’C. 412. Indeed it may well be doubted whether the decree is conclusive of any thing more than the fact that, the administrator has been legally required to account, and of the different items composing the administrator’s account, so as to relieve a Court of law from an investigation as to the propriety of their allowance or disallowance. Lyles v. Caldwell, 3 M’C. 225. Ordinary v. Robinson, 1 Bailey, 25. In Lyles v, Caldwell, Judge Colcock says, “ He” (speaking of the security) “ did not contest the legality of the decree nor allege that it was obtained by fraud, nor did he contend that he could in any manner shew that the amount decreed was not due, or that he had a right to do so. Such a decree is at least prima facie evidence of the sum due, and not being in any manner controverted, was properly considered in this case conclusive.” 3 M’C. 226. In the case of Harrington v. Cole, Judge Nott says, “ His (the Ordinary’s) “ proceedings are generally exparte, and therefore may be examined in a Court of Equity. But a Court of law is utterly incompetent to administer justice in such a case.” 3 M’C. 511. In the case of the Ordinary v. Robinson, Judge Nott says, “ It (the decree) must be conclusive of what it purports to decide.” 1 Bailey, 27. From these dicta of these *63 eminent and experienced Judges, it is obvious that they regarded the decree as only conclusive against objections to the regularity of the proceedings had before the Ordinary, and against all attempts to unravel the accounts thus settled and adjusted. For if the decree is only prima facie evidence of the sum due, like all prima facie evidence it may be rebutted and destroyed by shewing that in fact nothing was due. If the decree is examinable in equity, it cannot be conclusive at law; and any matter, which would go to defeat it, without subjecting a Court of law to an investigation of the accounts, which from its very organization it is incapable of doing, would be a competent defence at law.
The decree of the Ordinary undertakes to decide on the accounts of the administrator as to his receipts and expenditures ; and as to these it is conclusive, for this is all which it undertakes to decide. If it could be shewn that the account found in the hands of the administrator by the decree of the Ordinary, and set apart by it for distribution, had been in fact, or by operation of law, paid over to the distributees at a period anterior to the decree ; I apprehend the defence might havebeen made before the Ordinary, and his decree thus prevented; yet it is not indispensable that it should have been so made.
The office of the Ordinary extends more properly perhaps to the crediting and allowing of the administrator’s accounts for debts and expenditures, and thus ascertaining the residuum to be divided among the distributees, than to deciding whether that residuum has been properly paid away. But even if the decree is conclusive as to the amount due by the administrator; is it equally conclusive that the amount is due by him at its date 1 It cannot be conceded that the decree is conclusive of any thing beyond the amount. For it is only evidence ef the administrator’s indebtedness arising from the adjustment of his accounts. When was the residuum due and owing to the distributees 1 Whenever the administrator had in a.course of due administration paid the debts and the expenses. The decree is then evidence that at the close of his accounts returned by him to the Ordinary, he was indebted to his distributees in a sum equal to the clear residuum of the estate.
In the case before us, it appears from the decree itself, that the balance found to be in his hands by the decree, was the balance remaining after his last return of the 18th *64 of July, 1823. The decree is, therefore, evidence that oit that day he was indebted to his distributees in the sum of $2000, 98, which with the accruing interest from that day to the day of the date of the decree, 13th July, 1829, amounts to $2840, 98. This decree was pronounced at the instance of one of the distributees, who had attained full age : the other was still a minor. As to his moiety of the decree there is no difficulty, for if the decree was conclusive evidence both as to the amount, and that it was then due by the administrator, the administrator being his guardian would be antitied to retain it, and it would become chargeable to him as guardian, and he and his securities as administrator, would be discharged by operation of law from all liability for the same. The only difficulty in the case is as to the moiety of the decree to which Samuel Cobb, who is of full age, is iutitled. On his attaining full age, the powers of his guardian to receive his funds ceased. It was the legal termination of the authority of the guardian oyer the person and estate of his ward. It is, therefore, important to this part of the case, to see whether the decree fixes the debt of the administrator to him, as due after maturity, or during minority. If the decree was conclusive evidence that the debt was due at its date, then it would be after the ward had attained full age, and the authority of the guardian had ceased; but if only evidence that it was due at the date of his last return, as administrator, 18th July, 1823, then it was duriu g the minority of Samuel, and his guardian was intitled to receive it: and the defendant Jas. Cobb being both the administrator and guardian, his debt as administrator by operation of law, became chargeable to him as guardian. McDowell v. Caldwell, 2 M’C. C. R. 43. The effect of this would be to discharge the defendant and his securities to the administration bond from all liability to pay the decree.
P. L. 493.
I have already had occasion to shew that the decree in legal contemplation is only evidence of the debt due by the administrator at the date of his last return. This result was however obtained more by abstract reasoning than by a reference to the undertaking of the administrator and his securities in the bond. It will be satisfactory to see that this conclusion is in accordance with the liability contemplated by the administration bond. The condition of the bond is that the administrator shall 1st, make and return to the Ordinary a true and perfect *65 inventory of the goods and chattels and credits of the intestate. 2d, That he shall well and truly administer them according to law. 3d, That he shall make a just and true account of his actings and doings therein, when required by the Court of Ordinary. 4th, And all the rest of the said goods and chattels and credits which shall be found remaining upon the account of the said administration, the same being first allowed by the said Court, shall deliver and pay unto such persons as are respectively intitled to the same by law. The 2d, 3d, and 4th parts of the condition are alone those necessary to be noticed for the purposes of this case. The administration of the goods, chattels and credits of the intestate, according to law, would, perhaps, itself cover all the parts of the condition of the bond ; but considering it as an independent part, we may fairly say that it requires the administrator to apply the assets to the payment of the debts according to law. This is indeed the whole office of the administrator. The third part of the condition requires the administrator to make return of his actings and doings when required by the Court of Ordinary. Where the administrator does his duty, this is accomplished by his annual returns ; so soon as from these it appears that he has discharged the office of the administrator, by paying all the debts; the 4th part of the condition requires him to pay over the residue to the persons by law intitled to receive the same. For when the Ordinary receives his returns, examines and passes the debts and expences paid to his credit, his account has been allowed by the Court of Ordinary: and who was legally intitled to receive the residue at the date of the lást return of the administrator? The answer must be, James Cobb,\he guardian of the distributees. And he being both debtor an¿ creditor, the debt was extinguished, and the liability of the administrator and his securities ended. In every point of view, therefore, I think, the demurrer was properly sustained. The motion to reverse the circuit decision is refused.
Batjskett, for the motion.
D. L. Warblaw, contra.
Motion refused.